WILLIAMS, APPELLANT, *v.* CITY OF AKRON, APPELLEE, ET AL.

[Cite as *Williams v. Akron,* 107 Ohio St.3d 203, 2005-Ohio-6268.]

(No. 2004–0695—Submitted March 11, 2005—Decided December 14, 2005.)

LUNDBERG STRATTON, J.

## I. Introduction

{¶ 1} This appeal requires us to determine whether an appellate court may review a prima facie case to determine whether a directed verdict should have been granted after there has been a trial on the merits in a discrimination case. For the following reasons, we answer this question in the affirmative and affirm the court of appeals.

## II. Facts and Procedure

{¶ 2} Appellant, Gerald Williams, was employed with appellee, the city of Akron, as a police officer. On March 22, 1997, after an argument, Williams slapped his wife in the head. Williams's wife then called 9-1-1 and reported that he had beaten her. Her call angered Williams, who then hit her again, breaking her jaw. Williams was indicted on domestic-violence charges but eventually pleaded guilty to aggravated menacing.

{¶ 3} Williams initially lied to internal-affairs investigators about the incident. The city fired Williams, citing his attack on his wife, as well as his failure to be

truthful to the internal-affairs investigators regarding the assault. Williams's discharge was upheld by the Civil Service Commission.

{¶ 4} On November 23, 1999, Williams filed a complaint against the city alleging that his discharge had been motivated by racial discrimination. The city filed a motion for summary judgment, arguing that Williams had failed to establish a prima facie case of discrimination. The trial court denied the motion, and the case went to trial.

{¶ 5} At the close of Williams's evidence, the city moved for a directed verdict, again arguing that Williams had failed to establish a prima facie case of discrimination, which the court denied. At the close of all the evidence, the city renewed its motion for a directed verdict, again arguing that plaintiff had failed to establish a prima facie case of discrimination, which the trial court again denied. The court instructed the jury that in order to establish a prima facie case of discrimination, Williams had to prove by a preponderance of the evidence that (1) "[h]e is a member of a protected class," (2) "[h]e suffered an adverse unemployment action," (3) "[h]e was qualified for the position," and (4) "he was treated differently than a similarly situated white officer." The court then instructed "as a matter of law that Plaintiff is a member of a protected class and suffered an adverse employment action." However, the court instructed the jury that it would have to determine whether Williams "was qualified for the position" and whether Williams "was treated differently than a similarly situated white officer." The jury returned a verdict for Williams in the amount of $1.72 million.

{¶ 6} On appeal, the city's first assignment of error alleged, "The trial court incorrectly denied the City's Motion for a Directed Verdict at the close of Plaintiff's case." The Ninth District Court of Appeals held that Williams's evidence was insufficient to establish a prima facie case of discrimination because "Williams failed to satisfy the fourth prong of the McDonnell Douglas analysis in that he did not establish that he * * * was treated differently from similarly situated employees outside the protected class." Thus, the appellate court reversed the judgment of the trial court and entered judgment in favor of the city.

{¶ 7} The appellate court certified its decision as being in conflict with *Yelton v. Stehlin* (Aug. 20, 1999), 1st Dist. No. C–980503, 1999 WL 631002, and *Pelletier v. Rumpke Container Serv.* (2001), 142 Ohio App.3d 54, 753 N.E.2d 958, from the First District Court of Appeals, and with *Toole v. Cook* (May 6, 1999), 10th Dist. No. 98AP–486, 1999 WL 280804. Those cases hold that in a discrimination case on appeal, after a trial on the merits in favor of the plaintiff, an appellate court cannot revisit the plaintiff's prima facie case to determine whether the trial court erred in denying defendant's motion for a directed verdict at the close of the

plaintiff's case.[1]  Instead, an appellate court must examine the entire record to determine whether it supports the verdict.  Thus, the appellate court certified the following issue: "Whether a court can return to consider the prima facie case after a trial on the merits in a discrimination case."  This cause is now before this court upon our determination that a conflict exists.

{¶ 8} To provide a better understanding of this issue, we will first examine the unique framework that may be used to analyze a discrimination case, and was used in this case.

### III.  Analysis

#### A.  The *McDonnell Douglas* Paradigm

{¶ 9} Because of the difficulty of proving a discrimination claim, especially where there is no direct evidence of discriminatory motive, the Supreme Court created an analytical framework to address "the order and allocation of proof" in such cases.  *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668.

##### 1.  The Prima Facie Case

{¶ 10} The initial step in the paradigm requires the plaintiff to "carry the initial burden under the statute of establishing a prima facie case of racial discrimination.  This may be done by showing (i) that he belongs to a racial minority;  (ii) that he applied and was qualified for a job for which the employer was seeking applicants;  (iii) that, despite his qualifications, he was rejected;  and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."  *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.  However, the elements of the prima facie case must remain flexible so that they can conform to the facts of the case.  Id. at fn. 13.

{¶ 11} Establishing a prima facie case "creates a presumption that the employer unlawfully discriminated against the employee."  *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207.  "If the trier of fact believes plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case."  Id.;  see, also, *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407, quoting 1 D. Louisell & C. Mueller, Federal Evidence (1977) 536, Section 67 ("To establish a

---

1. *Pelletier,* cited by the appellate court below as being in conflict with its decision, in fact does not conflict with the appellate decision herein.  In *Pelletier,* the defendant did not move for a directed verdict at the close of plaintiff's evidence, but moved for a directed verdict only at the close of all the evidence.

'presumption' is to say that a finding of the predicate fact (here, the prima facie case) produces 'a required conclusion in the absence of an explanation' (here, the finding of unlawful discrimination).")

## 2. The Employer's Burden of Production

{¶ 12} If the plaintiff establishes a prima facie case, then the burden of production shifts to the employer to present evidence of "a legitimate, nondiscriminatory reason" for the employer's rejection of the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089, 67 L.Ed.2d 207. If the employer submits admissible evidence that *"taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then the employer has met its burden of production. (Emphasis sic.) *St. Mary's,* 509 U.S. at 509, 113 S.Ct. 2742, 125 L.Ed.2d 407. At this point, the presumption created by the prima facie case drops from the case because the employer's evidence has rebutted the presumption of discrimination. Id. at 510, 113 S.Ct. 2742, 125 L.Ed.2d 407.

{¶ 13} However, If the employer fails to meet its burden of production and "reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case," then the question of whether the employer discriminated must be decided by the fact finder. (Emphasis sic.) Id., 509 U.S. at 509–510, 113 S.Ct. at 2742, 125 L.Ed.2d 407.

## 3. Pretext

{¶ 14} If the employer meets its burden of production, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207, citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817, 36 L.Ed.2d 668. "But a reason cannot be proved to be 'a pretext *for discrimination'* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (Emphasis sic.) *St. Mary's,* 509 U.S. at 515, 113 S.Ct. 2742, 125 L.Ed.2d 407. A case that reaches this point is decided by the trier of fact on the ultimate issue of whether the defendant discriminated against the plaintiff.

## B. Ohio Law Permits a Trial Court to Review a Prima Facie Case

{¶ 15} The conflict cases cited by the appellate court rely on *United States Postal Serv.* v. *Aikens* (1983), 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403, which states that an appellate court cannot review a prima facie case of discrimination once the case has been tried on the merits. In *Aikens,* the plaintiff sued the Postal Service, alleging racial discrimination. The Postal Service filed a motion for dismissal at the close of Aikens's case, alleging that he had failed to establish a prima facie case, which the district court initially denied. Id. at 714, 103 S.Ct.

1478, 75 L.Ed.2d 403, fn. 4. However, at some point after the case had been tried on the merits, the district court held that Aikens had failed to establish a prima facie case of discrimination and entered judgment for the Postal Service. Id. at 713–714, 103 S.Ct. 1478, 75 L.Ed.2d 403.

{¶ 16} The Court of Appeals for the District of Columbia reversed the district court's judgment and remanded the case, holding that the district court had erred in requiring direct proof of discriminatory motive and in requiring Aikens to prove that he was at least as qualified as successful applicants for promotion. *Aikens v. United States Postal Serv. Bd. of Governors* (1981), 665 F.2d 1057, 214 U.S.App.D.C. 239.

{¶ 17} In its appeal to the Supreme Court, the Postal Service again alleged that Aikens had failed to establish a prima facie case of discrimination. The court stated, "Because this case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination *vel non*." *Aikens*, 460 U.S. at 713–714, 103 S.Ct. 1478, 75 L.Ed.2d 403. However, a key basis for reversal was that the trial court had required the plaintiff to prove its prima facie case by direct evidence of discrimination. The Supreme Court stated that the case must be remanded to allow the district court to determine on all the evidence before it whether the Postal Service had discriminated against Aikens. Id. at 717, 103 S.Ct. 1478, 75 L.Ed.2d 403.

{¶ 18} The Supreme Court also stated that "when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell–Burdine* presumption 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" (Footnote and citations omitted.) *Aikens*, 460 U.S. at 714–715, 103 S.Ct. 1478, 75 L.Ed.2d 403, quoting *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 19} Once the employer has submitted evidence of its reason for taking action against the employee, the court is then in a position to determine the ultimate factual question in the case, i.e., whether the employer discriminated against its employee. Id.

{¶ 20} The suggestion in *Aikens* that a reviewing court should not revisit a prima facie case of discrimination once a verdict is rendered is consistent with federal practice, which provides that when a trial court denies a motion for judgment as a matter of law at the close of plaintiff's evidence, a renewed motion at the close of all evidence will be considered on the record as it stands at that

time.  *Alston v. Bowins* (C.A.D.C.1984), 733 F.2d 161, 163–164;  see, also, *Bogk v. Gassert* (1893), 149 U.S. 17, 23, 13 S.Ct. 738, 37 L.Ed. 631.   Unlike federal practice, Ohio practice permits an appellate court to reexamine the sufficiency of just the plaintiff's evidence in determining whether the trial court erred in denying a defendant's motion for a directed verdict at the close of plaintiff's case, even though the case has been tried to conclusion.   *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464.

{¶ 21} In *Helmick*, the plaintiff filed a complaint against his insurer alleging breach of contract, breach of fiduciary duties, and bad faith.   The insurer moved for a directed verdict on the issue of punitive damages at the close of plaintiff's case, and again at the close of all the evidence.   The trial court denied each motion, and the jury returned a verdict for Helmick that included punitive damages.   The appellate court affirmed the judgment based on that verdict.

{¶ 22} The question before this court was whether the insurer had waived its right to preserve as error the denial of its motion for directed verdict submitted at the conclusion of plaintiff's evidence by submitting evidence in defense against plaintiff's claim.   Prior to *Helmick*, case law had held that the error was waived. We had held that when a motion of a defendant for a directed verdict was made at the conclusion of plaintiff's evidence and overruled, the defendant had an election either to stand on his or her exception to the ruling or to proceed with a defense.   *Halkias v. Wilkoff Co.* (1943), 141 Ohio St. 139, 25 O.O. 257, 47 N.E.2d 199, paragraph two of the syllabus.   If the defendant accepted the ruling, however erroneous it was, and proceeded with a defense, introducing evidence on his or her own behalf, the defendant waived his or her right to rely on the denial of his or her original motion.

{¶ 23} The insurer in *Helmick* argued that the waiver doctrine was "outdated and eviscerate[d] the fundamental requirement that a plaintiff must sustain his burden of proof before any defense is necessary."   We agreed, overruled paragraphs two and three of the syllabus in *Halkias*, and held: "When a motion for directed verdict is made by a defendant at the conclusion of the plaintiff's case and is overruled, the defendant's right to rely on the denial of that original motion as error is not waived when the defendant proceeds to present his evidence and defense as long as the motion is renewed at the conclusion of all the evidence."   *Helmick*, 39 Ohio St.3d 71, 529 N.E.2d 464, paragraph one of the syllabus.

{¶ 24} Williams urges us to hold that an appellate court must review the record as it stands at the close of all the evidence consistent with *Aikens* and federal practice.   He argues that the prima facie test is merely a pretrial tool for the judge and that its elements are not " 'evidence' or an 'evidentiary standard' but

rather an avenue for the court to make a preliminary determination on the question of motive."

{¶ 25} Undoubtedly, "the allocation of burdens and the creation of a presumption by the establishment of a prima facie case [are] intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089, 67 L.Ed.2d 207, fn. 8. Nevertheless, *Burdine* provides: "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." Id. at 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207. Only then does the burden shift to the defendant. Id. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207. " ' "To say that a plaintiff has established a *prima facie* case is simply to say that he has produced *sufficient evidence* to present his case to the jury, *i.e.*, he has avoided a *directed verdict*." ' " (Emphasis added.) *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 17, quoting *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 505, 575 N.E.2d 439, quoting *Rose v. Natl. Cash Register Corp.* (C.A.6, 1983), 703 F.2d 225, 227. If a plaintiff fails to establish a prima facie case of discrimination, a court may then dismiss the case. See, e.g., *Brown v. Natl. Academy of Sciences* (D.C.App.2004), 844 A.2d 1113; *Nweze v. New York City Transit Auth.* (C.A.2, 2004), 115 Fed.Appx. 484, 2004 WL 2496737; *Tungol v. Certainteed Corp.* (U.S.D.C.Kan.2002), 2002 WL 2004521. Thus, a prima facie case is an evidentiary threshold that plaintiff must meet or exceed in order to avoid a directed verdict.

{¶ 26} In this case, the prima facie case was framed as requiring Williams to prove (1) that he was a member of a protected class, (2) that he was qualified for the position, (3) that he suffered an adverse employment action, and (4) that he was treated less favorably than other similarly situated employees who were not members of the protected class. The first three elements are typical of most discrimination cases, and there is no dispute that Williams established these elements. The point of contention is whether in being dismissed, Williams was treated less favorably than similarly situated nonminority officers.

{¶ 27} A plaintiff can prove a prima facie case through circumstantial or direct evidence. *Aikens*, 460 U.S. at 714, 103 S.Ct. 1478, 75 L.Ed.2d 403, fn. 3. Williams's case turned solely on circumstantial evidence. Specifically, Williams's case turned on whether he had established by a preponderance of the circumstantial evidence that he was treated less favorably than similarly situated nonminority officers, i.e., whether there was disparate treatment. If he fails on this element, then he loses this case.

{¶ 28} The appellate court held that the evidence submitted by Williams was insufficient to establish that the other officers' situations were similar to Williams's and therefore did not meet the legal standard of "comparables."

Because the prima facie case is an evidentiary threshold that must be established to avoid dismissal of his case, we find it appropriate that the appellate court examined the sufficiency of just the plaintiff's evidence, i.e., whether Williams was treated less favorably than the comparables he offered as evidence.[2] To find that the evidence of a prima facie case becomes irrelevant once the case is tried to the jury denies any appellate review as to whether plaintiff met the evidentiary threshold required to avoid dismissal of his case at the close of his case-in-chief.

{¶ 29} Disallowing such appellate review would create a separate standard for discrimination cases as distinct from other civil actions, i.e., all Ohio civil cases would be subject to appellate review as to whether a directed verdict was properly denied—except discrimination cases. We find no justification to create a separate class for appellate review just for discrimination cases. Even *Aikens* does not require a different standard: "But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact. Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern 'the basic allocation of burdens and order of presentation of proof' * * * in deciding this ultimate question." *Aikens*, 460 U.S. at 716, 103 S.Ct. at 1478, 75 L.Ed.2d 403, quoting *Burdine*, 450 U.S. at 252, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 30} Therefore, we find that permitting an appellate court to revisit plaintiff's evidence in support of the prima facie case of discrimination, even after the case has been decided by a jury on the merits, does not unnecessarily avoid the ultimate question of discrimination vel non; rather, consistent with our holding in *Helmick*, we believe that it supports the well-founded rule that a plaintiff must prove essential elements of his or her case-in-chief before any defense is necessary.

## IV. Conclusion

{¶ 31} Although we often look to federal court interpretation of federal statutes analogous to Ohio statutes, we are not bound to apply such case law. *Coryell v.*

---

2. {¶ a} The dissent claims that the court of appeals "ignored evidence" of discrimination. However, as the dissent acknowledges, this evidence was *all* presented in the plaintiff's case-in-chief, not in the defendant's case or the plaintiff's rebuttal. The court of appeals' opinion reveals that the court reviewed all the evidence that plaintiff presented in his case-in-chief.

{¶ b} What the dissent really disagrees with is the court of appeals' conclusion that plaintiff presented *insufficient evidence* to prove his case. That is an argument on sufficiency of the evidence. There is no proposition of law before us on the sufficiency of the evidence, and we declined to accept jurisdiction of the companion discretionary appeal.

{¶ c} Therefore, we have before us only the legal issue of whether a discrimination case can be reviewed on appeal by the same standards that apply to all other Ohio cases, not whether we agree with the court of appeals' factual conclusions. While the dissent may argue that we should follow federal law, that is not the current status of Ohio law unless we were to overrule *Helmick* or carve out an exception for discrimination cases, which we have declined to do.

*Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 15, citing *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 610, 575 N.E.2d 1164. Pursuant to *Helmick*, we hold that in Ohio, an appellate court, in determining whether the trial court erred in denying a motion for a directed verdict at the close of a plaintiff's case, can review a plaintiff's case-in-chief, including, in a discrimination case, plaintiff's prima facie evidence of discrimination, if the defendant has properly preserved the issue for appeal by renewing the motion for a directed verdict at the close of all the evidence. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., concurs separately.

RESNICK and PFEIFER, JJ., dissent.

---

**O'DONNELL, J., concurring.**

{¶ 32} The matter certified to us concerns whether, in reviewing a judgment in a discrimination case that has gone to trial and resulted in a jury verdict for the plaintiff, an appellate court may review a trial court decision denying a motion for directed verdict made by the defendant at the close of the plaintiff's case-in-chief.

{¶ 33} The well-reasoned and researched majority and dissenting opinions fail to crystallize what I perceive as the central legal issue facing the court—whether to adhere to our decision in *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, or to disavow it. In his separate opinion, Justice Pfeifer has articulated his similar analysis and concluded that his best judgment is to simply overrule *Helmick*.

{¶ 34} Although overruling *Helmick* is tempting, our jurisprudence does not permit such a conclusion, because we are bound by stare decisis to follow existing precedent, not simply overrule it when a case presents a factual pattern that invites us to retreat from well-established, long-standing judicial authority arising from analysis of a complete record and application of sound legal principles.

{¶ 35} Accordingly, before it overrules established precedent, the Supreme Court should necessarily consider the test we recently established in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, in which we set forth certain criteria for determining when to consider such a retreat. Having reviewed *Galatis*, I do not believe the posture of this case justifies moving away from established precedent. Nothing before us demonstrates that *Helmick* was wrongly decided or that changes in circumstance no longer justify adherence to it. *Galatis* at ¶ 48. Nor does anything show that the rule in *Helmick* is

unworkable. Id. Finally, the rule in *Helmick* dates back 17 years, long enough to generate significant reliance on its principle. Id.

{¶ 36} Albeit unique, as articulated by Justice Resnick in her dissenting opinion, Ohio has positioned itself in *Helmick* and there articulated the reasons for permitting appellate review after a jury verdict of a trial court ruling on a motion for directed verdict by couching its decision in terms of judicial economy, facilitating the process of appellate review, and also relying on Civ.R. 50(A)(2). While Justice Resnick correctly points out that the vast majority of other jurisdictions differ from the practice in Ohio, the majority opinion follows Ohio law, as we are required to do. Accordingly, my judgment is that in keeping with our jurisprudence, the certified question should be answered in the affirmative.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

---

ALICE ROBIE RESNICK, J., dissenting.

{¶ 37} Aside from the court of appeals' decision in this case, every state and federal court that has addressed the present certified question, including the United States Supreme Court, has held that once a discrimination case is tried on the merits, it is error for an appellate court, in reviewing the propriety of any dispositive defense motion that was denied at trial, to revisit the issue of whether or how the plaintiff succeeded initially in establishing a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Thus, an appellate court may not overturn a jury verdict favorable to the plaintiff solely on the basis that the plaintiff failed to establish a *McDonnell Douglas* prima facie case of discrimination. Instead, the reviewing court must consider the sufficiency of the evidence as it bears on the ultimate question of discrimination vel non, that is, it must determine whether enough evidence was produced to allow the trier of fact to infer that the employment decision at issue was based on an illegal discriminatory criterion. See *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 510–511, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407; *Bazemore v. Friday* (1986), 478 U.S. 385, 398, 106 S.Ct. 3000, 92 L.Ed.2d 315; *United States Postal Serv. Bd. of Governors v. Aikens* (1983), 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403; *Sanchez v. Puerto Rico Oil Co.* (C.A.1, 1994), 37 F.3d 712, 720; *Coffey v. Dobbs Internatl. Serv., Inc.* (C.A.2, 1999), 170 F.3d 323, 326; *Hopp v. Pittsburgh* (C.A.3, 1999), 194 F.3d 434, 439; *Anastasio v. Schering Corp.* (C.A.3, 1988), 838 F.2d 701, 705, fn. 9; *Gibson v. Old Town Trolley Tours* (C.A.4, 1998), 160 F.3d 177, 180; *DeJarnette v. Corning, Inc.* (C.A.4, 1998), 133 F.3d 293, 297; *Jiminez v. Mary Washington College* (C.A.4, 1995), 57 F.3d 369, 377; *Barnes v. Yellow Freight Sys., Inc.* (C.A.5, 1985), 778 F.2d 1096, 1100; *Fuhr v. School Dist. of Hazel Park* (C.A.6, 2004), 364 F.3d 753, 757; *Kovacevich v. Kent State Univ.* (C.A.6, 2000), 224 F.3d 806, 821–822, 827;

*Brocklehurst v. PPG Industries, Inc.* (C.A.6, 1997), 123 F.3d 890, 897, fn. 5; *Equal Emp. Opportunity Comm. v. Avery Dennison Corp.* (C.A.6, 1997), 104 F.3d 858, 862; *Diettrich v. Northwest Airlines, Inc.* (C.A.7, 1999), 168 F.3d 961, 964; *Starks v. George Court Co., Inc.* (C.A.7, 1991), 937 F.2d 311, 315; *Cardenas v. AT & T Corp.* (C.A.8, 2001), 245 F.3d 994, 998; *Polacco v. Curators of Univ. of Missouri* (C.A.8, 1994), 37 F.3d 366, 369–370; *Bouman v. Block* (C.A.9, 1991), 940 F.2d 1211, 1223; *Casillas v. United States Navy* (C.A.9, 1984), 735 F.2d 338, 343; *Anaeme v. Diagnostek, Inc.* (C.A.10, 1999), 164 F.3d 1275, 1279; *Tidwell v. Carter Prod.* (C.A.11, 1998), 135 F.3d 1422, 1426; *Richardson v. Leeds Police Dept.* (C.A.11, 1995), 71 F.3d 801, 806; *Cleveland v. Home Shopping Network, Inc.* (C.A.11, 2004), 369 F.3d 1189, 1194; *Dunaway v. Internatl. Bhd. of Teamsters* (C.A.D.C.2002), 310 F.3d 758, 762; *Hayman v. Natl. Academy of Sciences* (C.A.D.C.1994), 23 F.3d 535, 537; *Huntley v. State* (Ala.1992), 627 So.2d 1013, 1015; *Heard v. Lockheed Missiles & Space Co.* (1996), 44 Cal.App.4th 1735, 1753–1756, 52 Cal.Rptr.2d 620; *Caldwell v. Paramount Unified School Dist.* (1995), 41 Cal.App.4th 189, 203–205, 48 Cal.Rptr.2d 448; *Landals v. George A. Rolfes Co.* (Iowa 1990), 454 N.W.2d 891, 893; *King v. Iowa Civ. Rights Comm.* (Iowa 1983), 334 N.W.2d 598, 603; *State Comm. on Human Relations v. Kaydon Ring & Seal, Inc.* (2003), 149 Md.App. 666, 696–698, 818 A.2d 259; *Baker v. Natl. State Bank* (1998), 312 N.J.Super. 268, 288–289, 711 A.2d 917; *Bovee v. New Mexico Hwy. & Transp. Dept.* (2002), 133 N.M. 519, 523–524, 65 P.3d 254; *Pelletier v. Rumpke Container Serv.* (2001), 142 Ohio App.3d 54, 60, 753 N.E.2d 958; *Yelton v. Stehlin* (Aug. 20, 1999), 1st Dist. No. C–980503, 1999 WL 631002; *Toole v. Cook* (May 6, 1999), 10th Dist. No. 98AP–486, 1999 WL 280804; *Xieng v. Peoples Natl. Bank of Washington* (1993), 120 Wash.2d 512, 522–523, 844 P.2d 389; *Barefoot v. Sundale Nursing Home* (1995), 193 W.Va. 475, 483–484, 457 S.E.2d 152.

{¶ 38} Holding singularly to the contrary, the majority finds it appropriate to depart from federal precedent on this issue because "[u]nlike federal practice, Ohio practice permits an appellate court to reexamine the sufficiency of just the plaintiff's evidence in determining whether the trial court erred in denying a defendant's motion for a directed verdict at the close of plaintiff's case even though the case has been tried to conclusion. *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464." But *Helmick* does not provide the necessary justification for deviating from federal precedent, which we usually follow in discrimination cases, since the federal decisions prohibiting posttrial review of the prima facie case of discrimination are not based on the rule of practice that *Helmick* serves to distinguish.

{¶ 39} As noted above, the federal courts are unanimous in their refusal to conduct a posttrial review of the prima facie case in considering a challenge to the trial court's denial of a dispositive defense motion. Moreover, the previously cited federal cases collectively involve appeals from the gamut of unsuccessful

trial motions, including motions for judgment as a matter of law that were made by the defendant and denied at the close of plaintiff's case and again at the close of all the evidence. Yet none of those decisions even mention, let alone rely upon, the rule of federal practice that requires a defendant to elect between preserving its challenge to the sufficiency of plaintiff's initial evidence or submitting evidence in defense of the claim. Thus, while *Helmick* may well serve to support the majority's claimed distinction between Ohio and federal practice, the distinction itself is irrelevant.

{¶ 40} Nevertheless, the majority concludes that permitting an appellate court to revisit plaintiff's evidence in support of the prima facie case of discrimination in the renewed-directed-verdict context is consistent with the principle reflected in *Helmick* that "a plaintiff must prove essential elements of his or her case before progressing beyond his or her case-in-chief." Of course, this assumes that the discrete elements of the *McDonnell Douglas* prima facie case are "essential elements" of a discrimination claim, which is a false assumption.

{¶ 41} The *McDonnell Douglas* prima facie case is neither coextensive with the plaintiff's case-in-chief nor the exclusive means by which the plaintiff is permitted to raise an inference of discrimination. It is merely the first stage of a three-part analytic framework that overlies but does not necessarily regulate or correspond to the actual events of a trial. The paradigm created in *McDonnell Douglas* " 'is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' " *Aikens,* supra, 460 U.S. at 715, 103 S.Ct. 1478, 75 L.Ed.2d 403, quoting *Furnco Constr. Corp. v. Waters* (1978), 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957. It "helps the judge determine whether the litigants have created an issue of fact to be decided by the jury. In a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case [are] intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207, fn. 8.

{¶ 42} While the *McDonnell Douglas* model may tend to influence the order and allocation of proof in a discrimination case, there is no requirement that a trial actually proceed in accordance with that pattern. "No formal trifurcation of trial is required under *McDonnell Douglas* because it provides 'merely a sensible, orderly way to evaluate the evidence * * *.' " *Casillas,* supra, 735 F.2d at 343, quoting *Aikens,* supra, 460 U.S. at 715, 103 S.Ct. 1478, 75 L.Ed.2d 403. Indeed, " 'as a practical matter,' the 'real-life sequence of a trial' does not necessarily comport with [the *McDonnell Douglas* ] model." *Cline v. Catholic Diocese of Toledo* (C.A.6, 2000), 206 F.3d 651, 659, fn. 6, quoting *St. Mary's Honor Ctr.,* supra, 509 U.S. at 510, 113 S.Ct. 2742, 125 L.Ed.2d 407, fn. 3.

{¶ 43} The prima facie case under *McDonnell Douglas* consists of elements that are designed to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for an employment action. See *Burdine*, supra, 450 U.S. at 253–254, 101 S.Ct. 1089, 67 L.Ed.2d 207; *Internatl. Bhd. of Teamsters v. United States* (1977), 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396; *Hollins v. Atlantic Co.* (C.A.6, 1999), 188 F.3d 652, 659; *Mauzy v. Kelly Serv., Inc.* (1996), 75 Ohio St.3d 578, 583, 664 N.E.2d 1272. Discrimination is inferred from the satisfaction of these elements because once the usual legitimate reasons are eliminated, the most likely alternative explanation for the employer's decision is discrimination. See *Waters*, supra, 438 U.S. at 577, 98 S.Ct. 2943, 57 L.Ed.2d 957.

{¶ 44} Of course, any Title VII or R.C. Chapter 4112 plaintiff bears the initial burden of establishing a "prima facie case" in the sense that he or she must produce enough evidence to allow the jury to infer the ultimate fact of discrimination. But there is no requirement that a plaintiff use or rely upon the presumption of discrimination that arises from the establishment of a *McDonnell Douglas* prima facie case in order to carry that burden.

{¶ 45} "[T]he *McDonnell Douglas* pattern [is not] the *only* means of establishing a prima facie case of individual discrimination. * * * The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." (Emphasis sic.) *Internatl. Bhd. of Teamsters*, supra, 431 U.S. at 358, 97 S.Ct. 1843, 52 L.Ed.2d 396.

{¶ 46} The *McDonnell Douglas* prima facie case is simply one form of circumstantial evidence that is probative of intentional discrimination. See, e.g., *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 505, 575 N.E.2d 439, quoting *Barnes v. GenCorp., Inc.* (C.A.6, 1990), 896 F.2d 1457, 1464 (*McDonnell Douglas* specifies " 'the elements a plaintiff must prove to establish a prima facie case of discrimination absent direct, circumstantial, or statistical evidence of discrimination' "). It is designed to facilitate the inquiry into intentional discrimination, not to unduly restrict the circumstances from which discrimination may be inferred. Thus, as one court aptly observed, for a reviewing court "to wander afield in pursuit of [a defendant's] phantom 'prima facie case' argument is a bit like undertaking early morning calisthenics: it might be good exercise, but it certainly is not essential to the business of the day." *Sanchez*, supra, 37 F.3d at 720.

{¶ 47} In the final analysis, however, the majority is not simply permitting an appellate court to reexamine the sufficiency of plaintiff's initial evidence as it bears on the prima facie case of discrimination. Here the majority is permitting

an appellate court to use the prima facie case as a means to nullify a jury's determination of discrimination based solely on a review of some of plaintiff's initial evidence. The court of appeals in this case conflated the distinct stages of the *McDonnell Douglas* inquiry by forcing appellant to demonstrate pretext at the initial prima facie stage and then unfairly restricted the evidence that may be presented on that issue. As a result, the court overturned a jury verdict in appellant's favor based solely on a finding that a portion of the evidence presented in plaintiff's case-in-chief is insufficient to support the verdict.

{¶ 48} The court of appeals found that "in order to establish a prima facie case of discrimination, [appellant] must show that he was treated differently than similarly situated employees from outside the class." The court of appeals then reviewed certain evidence that several white employees had been treated differently from appellant, who is black, under allegedly similar circumstances. The court of appeals essentially concluded that the white officers were not similarly situated and thus were not appropriate "comparables," because, unlike Williams, they did not commit acts of domestic violence that resulted in serious physical injury to the victim. This required characteristic for a similarly situated employee is, in fact, the primary nondiscriminatory explanation given by appellee for treating appellant differently from the white officers. Thus, appellee's chief of police testified that "the biggest issue with Gerald, Mr. Williams is that he caused serious physical harm; and none of the other officers that we have discussed to this point have done that * * *."

{¶ 49} Under the *McDonnell Douglas* framework, the plaintiff is not required to make this kind of showing at the prima facie stage. Evidence that similarly situated non-class-members were treated differently from plaintiff does not enter the inquiry until its third and final stage, when the plaintiff is given an opportunity to demonstrate that the employer's stated reason for its employment decision is merely a pretext for discrimination. Thus, as the Supreme Court explained in *McDonnell Douglas*:

{¶ 50} "On remand, respondent [employee] must * * * be afforded a fair opportunity to show that petitioners' stated reason for respondent's rejection was in fact pretext. *Especially relevant to such a showing would be evidence that white employees involved in acts against petitioner of comparable seriousness to the 'stall-in' [by respondent] were nevertheless retained or rehired.*" (Emphasis added.) Id., 411 U.S. at 804, 93 S.Ct. 1817, 36 L.Ed.2d 668.

{¶ 51} Moreover, by considering as similarly situated only those employees with an attribute that mirrors appellee's legitimate, nondiscriminatory explanation for discharging appellant, the court of appeals "inappropriately short-circuited the *McDonnell Douglas* framework at the *prima facie* stage and frustrated the plaintiff's ability to establish that the defendant's proffered reasons

were pretextual." *Bullington v. United Air Lines, Inc.* (C.A.10, 1999), 186 F.3d 1301, 1316, fn. 11.

{¶ 52} As explained more fully in *Kenworthy v. Conoco, Inc.* (C.A.10, 1992), 979 F.2d 1462:

{¶ 53} "[R]uling that the plaintiffs did not establish a prima facie case based on the reasons for their discharge 'raise[d] serious problems under the *McDonnell Douglas* analysis, which mandates a full and fair opportunity for a plaintiff to demonstrate pretext. Short-circuiting the analysis at the prima facie stage frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual * * *; if a plaintiff's failure to overcome the reasons offered by the defendant for discharge defeats the plaintiff's prima facie case, the court is then not required to consider plaintiff's evidence on these critical issues.' " Id. at 1470, quoting *MacDonald v. E. Wyoming Mental Health Ctr.* (C.A.10, 1991), 941 F.2d 1115, 1119. See, also, *Cline,* supra, 206 F.3d at 660 (this kind of analysis "conflate[s] the distinct stages of the *McDonnell Douglas* inquiry by using [defendant's] 'nondiscriminatory reason' as a predicate for finding [plaintiff] to have failed to make a prima facie case * * * [and] improperly import[s] the later stages of the * * * inquiry into the initial prima facie stage"); *Heard,* supra, 44 Cal.App.4th at 1754, 52 Cal.Rptr.2d 620 (the employer's "interpretation of the similarly situated attribute [to comport with its explanation for firing plaintiff] effectively eliminate[s] [its] obligation to produce a legitimate nondiscriminatory reason for its employment decision"); *Yarbrough v. Tower Oldsmobile, Inc.* (C.A.7, 1986), 789 F.2d 508, 512 (reason for discharge given by employer "is not * * * appropriately brought as a challenge to the sufficiency of [plaintiff's] prima facie case").

{¶ 54} In reality, therefore, the court of appeals required appellant to prove the ultimate fact of discrimination as part of his prima facie case, but refused to consider the totality of the evidence as it bore on that fact. For example, the court of appeals ignored evidence that appellee had treated appellant disparately in the past, that appellee generally meted out harsher discipline to black officers than to white officers for equivalent offenses, and that appellee's stated reasons for discharging appellant were either contrived or unworthy of credence. Yet each of these items is exactly the kind of evidence that suffices to raise an inference of discrimination. See, e.g., *Reeves v. Sanderson Plumbing Prod., Inc.* (2000), 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105; *McDonnell Douglas,* 411 U.S. at 804–805, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Young v. Warner–Jenkinson Co., Inc.* (C.A.8, 1998), 152 F.3d 1018, 1022, 1024; *Nelson v. Boatmen's Banc-shares, Inc.* (C.A.8, 1994), 26 F.3d 796, 801; *Kaydon Ring & Seal, Inc.,* supra, 149 Md.App. at 701–702, 818 A.2d 259.

{¶ 55} What is most ironic, all of these evidentiary items were presented *during the appellant's case-in-chief.* Therefore, the rule of *Helmick* allowing appellate review of the denial of a motion for directed verdict at the close of plaintiff's case-in-chief is simply irrelevant.

{¶ 56} The majority's criticism of this dissent is itself testimony to the majority's confusion. The certified issue in this case is whether the court of appeals may properly return to consider the prima facie case of discrimination, not whether it can return to consider the evidence presented during the plaintiff's case-in-chief. The holding in *Helmick* goes only so far as to allow an appellate court to revisit the plaintiff's case-in-chief, which does not answer the certified issue. Assuming that *Helmick* correctly states the law, the question remains whether an appellate court may limit its review of the evidence presented during plaintiff's case-in-chief to how it bears on the *McDonnell Douglas* prima facie case. If the court of appeals actually considered the entire record as it stood at the close of plaintiff's evidence, there would have been no need for the court of appeals to certify the present issue.

{¶ 57} The majority's confusion is evident from the fact that it ascribes inconsistent meanings to the term "prima facie case." Sometimes in its opinion the majority uses the term as synonymous with the plaintiff's case-in-chief and sometimes to indicate the four-element *McDonnell Douglas* test as modified by the court of appeals. The result is a faulty syllogism in which the majority concludes that since *Helmick* allows the court of appeals to revisit the plaintiff's case-in-chief it must also allow the court of appeals to limit its review to the *McDonnell Douglas* prima facie case of discrimination. And on top of this, the majority readily admits that it is allowing a jury verdict to be overturned without ever considering whether there was sufficient evidence to sustain it.

{¶ 58} I respectfully dissent.

PFEIFER, J., concurs in the foregoing opinion.

---

**PFEIFER, J., dissenting.**

{¶ 59} I would overrule *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, and adopt the federal rule set forth in *United States Postal Serv. Bd. of Governors v. Aikens* (1983), 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403. The court stated, "Because this case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of

discrimination * * *." *Aikens*, 460 U.S. at 713–714, 103 S.Ct. 1478, 75 L.Ed.2d 403. I can't say it any better. I dissent.

---

Thompson & Bishop, Dennis R. Thompson, and Christy B. Bishop; and Gittes & Schulte and Frederick M. Gittes, for appellant.

Patricia Ambrose Rubright, Cheri B. Cunningham, and Deborah M. Forfia, Assistant Directors of Law; and Brose McDowell and Clair E. Dickenson, for appellee.

Gittes & Schulte, Frederick M. Gittes and Kathaleen B. Schulte, urging reversal for amici curiae, United Black Firefighters of Akron, Vanguards of Cleveland, the Ohio Employment Lawyers Association, Ohio Now Education and Legal Defense Fund, and the Ohio Civil Rights Coalition.