[Cite as *Refaei v. Ohio State Univ. Hosp.*, 2010-Ohio-5911.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SULEIMAN A. REFAEI

   Plaintiff

   v.

OHIO STATE UNIVERSITY HOSPITAL

   Defendant
   Case No. 2008-01529

Judge Joseph T. Clark

DECISION

{¶ 1} Plaintiff brought this action alleging employment discrimination. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} On January 20, 2004, plaintiff submitted an application for the position of "radiology manager" at defendant's University Hospital. (Defendant's Exhibit B.) Thereafter, plaintiff was interviewed at University Hospital before a committee led by Senior Director of Imaging Services, Bruce Lauer. The committee ultimately selected another candidate who accepted an offer of employment from Lauer in March 2004. Lauer subsequently telephoned plaintiff to inform him that he had not been selected, but also told him that a similar radiology manager position had recently become available at defendant's East Hospital.

{¶ 3} On April 14, 2004, plaintiff submitted an application for the East Hospital position. (Defendant's Exhibit K.) On May 12, 2004, a committee of employees, again led by Lauer, interviewed plaintiff at East Hospital. The committee selected a candidate

other than plaintiff for the position, but identified plaintiff as its second choice. The preferred candidate did not accept Lauer's offer of employment, though, and Lauer thus telephoned plaintiff to discuss the position. While there is no dispute that Lauer and plaintiff spoke over the telephone on numerous occasions in June and July 2004, plaintiff testified that Lauer never offered him the position, whereas Lauer testified that plaintiff was offered the position but declined it based upon the proposed salary.

{¶ 4} Lauer stated that when plaintiff rejected his final offer after weeks of negotiating, he considered other candidates and ultimately reached an agreement with one of them in late July 2004. On August 3, 2004, defendant issued a letter to plaintiff formally notifying him that the position had been filled by another candidate.

{¶ 5} On September 20, 2004, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC). (Defendant's Exhibit T.) On October 24, 2005, plaintiff filed his original complaint, pro se, in Court of Claims Case No. 2005-10543. (Defendant's Exhibit U.) Plaintiff voluntarily dismissed Case No. 2005-10543 on February 8, 2007, and re-filed his claims in the instant case on January 22, 2008, pursuant to the savings provision set forth in R.C. 2305.19(A).

{¶ 6} Plaintiff, who is Arab, Muslim, and a native of Jordan, alleges that defendant declined to offer him either position on the basis of his "race, religion and national origin" in violation of R.C. 4112.02 and 4112.99.

{¶ 7} R.C. 4112.02 provides, in part:

{¶ 8} "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 9} "In a case alleging employment discrimination, the plaintiff bears the initial burden of either presenting direct evidence of discrimination, or of establishing a prima facie case of discrimination indirectly by following the standard set forth in *McDonnell Douglas Corp v. Green* (1973), 411 U.S. 792 * * *." *James v. Delphi Automotive Sys.*, Franklin App. No. 04AP-215, 2004-Ohio-5493, ¶7.

{¶ 10} Absent direct evidence of discrimination, a plaintiff may establish his prima facie case by showing: (1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications, he was rejected for the position; and (4) that the position remained open or was filled by a person not of the protected class. *Birch v. Cuyahoga Cty. Probate Court* (C.A.6, 2004), 392 F.3d 151, 166, fn. 12; *Ashiegbu v. Purviance* (S.D.Ohio 1998), 74 F.Supp.2d 740, 750; *Collins v. Orange City School Dist. Bd. of Ed.*, Cuyahoga App. No. 93778, 2010-Ohio-3195, ¶14.

{¶ 11} "If the plaintiff establishes a prima facie case, then the burden of production shifts to the employer to present evidence of 'a legitimate, nondiscriminatory reason' for the employer's rejection of the employee." *Williams v. City of Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶12. "If the employer meets its burden of production, 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Id., at ¶14, quoting *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254.

{¶ 12} The court shall address plaintiff's claims concerning the two radiology manager positions separately, first considering the University Hospital position. With respect to plaintiff's burden of establishing a prima facie case of discrimination, plaintiff established that he is a member of a protected class based upon his national origin, religion, and race or ancestry. Furthermore, there is no dispute that plaintiff was qualified for the position and that defendant rejected him for the position. Additionally, Lauer testified that the position was filled by Donald Adamson, whom Lauer believes to be Caucasian, non-Muslim, and a native of the United States of America.

{¶ 13} Accordingly, the court finds that plaintiff established his prima facie case, thus shifting the burden to defendant to demonstrate a non-discriminatory reason for its decision to not offer plaintiff the position. "If the employer submits admissible evidence that 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has met its burden of production." Id., at ¶12, quoting *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 509.

{¶ 14} Lauer testified that the primary reasons for selecting Adamson were his "hands-on experience" in performing computed tomography (CT) scans, his being licensed by the Ohio Department of Health to perform CT scans, and his registration with the American Registry of Radiologic Technologists (ARRT). According to Lauer, the position involved supervising employees in the performance of CT scans, and it was important for the radiology manager to be experienced in performing such scans. Lauer stated that plaintiff had less experience than Adamson in performing such scans, that plaintiff was not licensed to perform CT scans in Ohio, and that plaintiff was not registered with ARRT.

{¶ 15} Lauer acknowledged that Adamson did not have a bachelor's degree, which was listed as a minimum qualification in the position description. (Defendant's Exhibit A.) Lauer also acknowledged that experience in performing CT scans was not specifically listed as a qualification in the position description, but he testified that the position inherently required such experience and that Adamson's background in performing CT scans made him the most qualified candidate.

{¶ 16} The court finds that Lauer's testimony demonstrated a legitimate, nondiscriminatory reason for hiring Adamson rather than plaintiff. The burden thus shifts back to plaintiff, who must prove that Lauer's stated reason for not offering him the position is mere pretext for discrimination. "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Ballard v. Community Support Network*, Franklin App. No. 10AP-104, 2010-Ohio-4742, ¶21.

{¶ 17} Plaintiff testified that he had hands-on experience in performing CT scans, and he thus asserts that Adamson's candidacy for the position cannot be distinguished on that basis. However, plaintiff did not elaborate on his experience in performing CT scans, and the court finds that he failed to establish that his experience in that regard was comparable to that of Adamson.

{¶ 18} Plaintiff also asserts that, when compared to Adamson, he better satisfied the minimum qualifications for the position. The minimum qualifications were: "Bachelor of Science degree, ARRT registry; minimum 4 years management experience, good knowledge of imaging equipment/operations required." (Defendant's

Exhibit A.) As stated above, Adamson did not have a bachelor of science degree. According to Lauer's testimony and Adamson's employment application, Adamson was registered with ARRT, had served in a supervisory role from December 1999 until the time of his hiring in March 2004, and was knowledgeable about imaging equipment and operations. (Plaintiff's Exhibit 28.)

{¶ 19} With respect to plaintiff, Lauer acknowledged that plaintiff met the educational, managerial, and minimum knowledge requirements of the position. As plaintiff admitted, however, he was not registered with ARRT. While plaintiff testified that he could obtain ARRT registration within a matter of days, Lauer stated that it would have taken plaintiff at least two years.

{¶ 20} Finally, plaintiff testified that he went to lunch with Lauer on the day of his interview and that Lauer made him feel uncomfortable by asking questions about Arab and Muslim culture. Plaintiff acknowledged that the conversation at lunch dealt with various aspects of both his and Lauer's backgrounds, including the fact that they both had lived in Cincinnati at one time and that plaintiff had lived and worked in Saudi Arabia for the last four years. Further, plaintiff admitted that he initiated a discussion of his religious dietary restrictions after he asked Lauer for a recommendation on what to order for lunch.

{¶ 21} Upon review, the court finds that plaintiff did not meet his burden of proving that defendant's stated reasons for not offering him the position were a pretext for discrimination. The court concludes that plaintiff failed to prove that Lauer was untruthful in testifying that Adamson's experience in performing CT scans made him a more preferable candidate than plaintiff. The court further concludes that plaintiff did not prove that discrimination was the reason for his not being hired. Accordingly, plaintiff failed to prove his claim of employment discrimination by a preponderance of the evidence as to the University Hospital position.

{¶ 22} With respect to the East Hospital position, Lauer acknowledged that he considered plaintiff to be qualified for the position. Lauer also testified that the position was ultimately filled by an individual believed to be Caucasian, non-Muslim, and a native of the United States of America. Plaintiff thus satisfies the first, third, and fourth

elements of his prima facie case. As to the second element, the parties dispute whether defendant rejected plaintiff for the position.

{¶ 23} Lauer testified that his usual practice for hiring employees is to identify one or more preferred candidates, obtain salary ranges from defendant's compensation department based upon the position and the candidate's background, orally offer the position to the candidate, and, if the candidate accepts the offer, then defendant's human resources department sends a letter of confirmation to the candidate.

{¶ 24} Lauer testified that the committee that interviewed candidates for the East Hospital position decided to offer the position to candidate Wanda Carey and selected plaintiff as its second choice. According to Lauer, when he telephoned Carey to offer her the position in late May 2004, she said she was no longer interested.

{¶ 25} Lauer stated that he then telephoned plaintiff and offered him the position at an annual salary of $63,000. Lauer explained that several weeks earlier, around the time that plaintiff applied for the position, he requested a salary range for plaintiff from defendant's compensation department staff, who responded with a range of approximately $60,000 to $63,000. (Defendant's Exhibit L.) Lauer testified that plaintiff rejected the initial offer of $63,000, as well as a subsequent offer of $65,000.

{¶ 26} Lauer stated that he conferred with the compensation department once more and received authorization to offer plaintiff a $3,000 signing bonus. According to Lauer, he informed plaintiff by telephone that the final offer for the position was a salary of $65,000, plus the signing bonus, but that plaintiff again rejected his offer. Lauer testified that after having "a number of phone calls" with plaintiff over several weeks, it was clear to him that plaintiff would not accept an offer of less than $75,000, which was more than he or the compensation department was willing to offer. Lauer stated that as a result of this impasse, he informed plaintiff by telephone on July 12, 2004, that he had "moved on" and selected another candidate. On approximately July 20, 2004, the other candidate accepted an offer from Lauer. Defendant's human resources department sent plaintiff a form rejection letter dated August 3, 2004. (Plaintiff's Exhibit 10.)

{¶ 27} Plaintiff acknowledged that he spoke with Lauer several times between June and July 2004 and discussed potential salary figures for the position, but he testified that he never understood Lauer to be offering him the position. Plaintiff

explained that Lauer never used the word "offer" and that he believed defendant only made offers in writing. According to plaintiff, Lauer informed him initially that the proposed salary provided by the compensation department was $63,000 or $65,000, but that Lauer believed plaintiff deserved a higher salary and he would therefore request the same from the compensation department. Plaintiff testified that he then told Lauer that he desired a salary of $75,000 and asked Lauer to determine what the "final offer" would be and to send it to him in writing. Plaintiff testified that although he spoke with Lauer by telephone multiple times after their initial exchange and discussed salary figures, he did not believe that Lauer ever truly made him an offer.

{¶ 28} Plaintiff stated that he was surprised when Lauer informed him on July 12, 2004, that another candidate had been selected, and that he consequently telephoned the Administrative Director of East Hospital, Diane Gordon, for clarification. According to plaintiff, Gordon asked him over the telephone whether he would "accept" the position at a salary of $65,000, and he responded by telling Gordon to send a written offer and "I will get back with you," but Gordon declined to send a written offer.

{¶ 29} Based upon the totality of the evidence, the court finds that defendant did not reject plaintiff's candidacy for the position at East Hospital. To the contrary, the court finds that defendant orally offered the position to plaintiff multiple times, through both Lauer and Gordon, but that plaintiff declined these offers.

{¶ 30} Regardless of whether Lauer and Gordon used the word "offer," or whether plaintiff believed they should have made an offer only in writing, it is clear that Lauer informed plaintiff that the position was available to him and that it remained available for several weeks while the parties negotiated compensation terms. By plaintiff's own admission, even after Lauer ceased negotiating with him, Gordon asked him if he would "accept" the position with a salary of $65,000.

{¶ 31} The court finds that under such circumstances, plaintiff lacked credibility in testifying that he never understood Lauer or Gordon to have offered him the position. Indeed, the charge of discrimination which plaintiff filed with OCRC states that "Mr. Lauer initially made me a vague offer which he would not put into writing * * *." (Defendant's Exhibit T.) The court concludes, though, that regardless of whether plaintiff misunderstood Lauer and Gordon, or if the parties simply failed to reach

mutually agreeable terms of compensation, defendant did not reject plaintiff for the East Hospital position; rather, plaintiff failed to obtain the position because he did not accept any of defendant's offers.

{¶ 32} For the foregoing reasons, the court finds that plaintiff failed to prove either of his claims of discrimination by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

SULEIMAN A. REFAEI

    Plaintiff

    v.

OHIO STATE UNIVERSITY HOSPITAL

    Defendant
    Case No. 2008-01529

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Jennifer A. Adair    Mark J. Byrne
Randall W. Knutti    1014 Vine Street
Assistant Attorneys General  2300 Kroger Building
150 East Gay Street, 18th Floor Cincinnati, Ohio 45202
Columbus, Ohio 43215-3130

RCV/cmd
Filed November 17, 2010
To S.C. reporter December 1, 2010