[Cite as *Johnson v. Toledo City School Dist. Bd. of Edn.*, 2023-Ohio-1306.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

David D. Johnson                                    Court of Appeals No. L-22-1094

    Appellant                                    Trial Court No. CI020203646

v.

Toledo Board of Education of
Toledo City School District

and

Toledo Federation of                               **DECISION AND JUDGMENT**
Teachers
                                                   Decided: April 21, 2023
    Appellees

* * * * *

Meghan Anderson Roth, Shawn Nelson, Esq., and Amy M. Natyshak attorneys for
appellee, Toledo Board of Education,

Gregg A. Peppel and Dawn T. Christen, attorneys for appellee, Toledo Federation
of Teachers,

David D. Johnson, Pro se.

* * * * *

**DUHART, P.J.**

{¶ 1} Appellant, David Johnson, filed a pro se notice of appeal from the March 31,
2022 judgments of the Lucas County Court of Common Pleas, each granting summary
judgment to appellees the Toledo Board of Education ("TPS") and Toledo Federation of
Teachers (TFT) on Johnson's employment discrimination complaints. Based upon our

review of the record, we find that Johnson failed to establish a prima facie case of discrimination against TPS or TFT, and we affirm the judgments of the trial court.

## Factual & Procedural Background

### *Johnson's History with TPS*

{¶ 2} While the instant appeal relates largely to Johnson's September 2019 termination by TPS, Johnson's previous TPS and employment history in Georgia are relevant to our discussion and analysis in this case. Johnson first worked for TPS in the 1990s. During that time, he had various disciplinary issues. He ultimately resigned from his position without notice and brought various lawsuits against TPS related to his employment and subsequent job applications he submitted after his resignation.

{¶ 3} Johnson's employment file and prior court rulings describe the facts related to this history. According to a review of Johnson's personnel file, there are notations from the 1990s that he had to consistently be reminded of his duties in the cafeteria. Frequently he was not in the cafeteria area or failed to maintain order when he was there. Bus duty created problems too for Johnson. He seemed unable to line the children up or walk them out quietly. He missed a Conflict Mediation Training, and was not available for assemblies. The file also notes several incidents of inappropriate behavior. He was absent from a monthly staff meeting. He was removed as a coach from Waite High School. He failed to report to work on the first teacher workday, failed to provide proper FMLA paperwork when taking a leave of absence and had related-disciplinary issues.

2.

{¶ 4} For example, in August of 1999, without informing TPS, Johnson began working as an assistant principal at a school in Tifton, Georgia. He then failed to appear for his teaching assignment in Toledo and submitted a resignation letter, which was effective immediately. Halfway through the school year, Johnson was suspended from his administrative position in Georgia. He then applied to return to a teaching position in Toledo, but TPS did not accept his application for various reasons.

{¶ 5} TPS also learned of a suspension imposed by the Dougherty County Georgia Board of Education (DCBE). The DCBE suspended Johnson for 60 days for failing to submit lesson plans, failing to perform bus monitoring duties, failing to obtain permission to leave school early, and failing to set up parent-teacher conferences. In 2003, the DCBE terminated Johnson from his teaching position due to an allegation that he had physically abused his sons by whipping them with a belt buckle and hitting them with a closed fist. Johnson appealed both decisions to the Georgia State Board of Education, and the Board upheld these decisions. *See Johnson v. Toledo Bd. of Educ.*, No. 3:02CV7509, 2003 WL 22436127, *1 (N.D. Ohio Oct. 23, 2003).

{¶ 6} Beginning in May 2000, Johnson attempted to apply for additional administrative jobs at TPS. He was rejected for those positions, in part because he was not qualified, and, in part, because of his history with TPS. He sued the district for failure to hire in both state and federal court, alleging that TPS failed to hire him in retaliation for filing an OCRC charge in 1998 related to his prior employment with TPS.

3.

**{¶ 7}** The Federal District Court ultimately granted TPS's motion for summary judgment in that case and held that TPS had legitimate, nondiscriminatory and nonretaliatory reasons for not hiring Johnson- namely, all the disciplinary issues described above related to his prior employment with the district and his resignation without notice. *Johnson* at *2. Johnson then moved back to Georgia and was hired as a teacher there. Subsequently, the events described above regarding his discipline, termination, and license suspension in Georgia occurred. Johnson continued to submit applications to TPS.

**{¶ 8}** Johnson then applied for a teaching certificate in Ohio, and was rejected because he had failed to disclose the issues in Georgia to the Ohio Department of Education (ODE). The ODE found that he was ineligible for a license for a period of three years. Johnson appealed ODE's decision in the Lucas County Court of Common Pleas, which, in turn, upheld ODE's decision. *See Johnson v. Ohio Dept. of Ed.*, Lucas County Court of Common Pleas case No. CI-200701313.

### TPS Hires Johnson as a Substitute in 2018 & Terminates him Fall 2019

**{¶ 9}** In 2018, James Hopkins, the Assistant Director of Talent Acquisition and Management at TPS, processed an application, interviewed Johnson, and hired him as a substitute teacher. Johnson did not disclose his issues in Georgia with either Romules Durant, TPS Superintendent, ("Dr. Durant), or with Hopkins. If he had, that would have disqualified him from employment.

4.

{¶ 10} TPS hired Johnson as a substitute teacher in December 2018, and he began working in January 2019. After serving as a substitute teacher through the end of the 2019 school year, TPS offered him a contract teaching position at Martin Luther King Jr. Academy for Boys ("King"). He served as a contract teacher through his termination, which was final on September 20, 2019.

{¶ 11} TPS terminated Johnson after the Human Resources Department learned that he had falsified his job application with material misrepresentations. Specifically, Johnson failed to disclose that in 2002, the DCBE suspended him for 60 days for failing to submit lesson plans, failing to perform bus monitoring duties, failing to obtain permission to leave school early, and failing to set up parent-teacher conferences. Also, as noted, in 2003, the DCBE terminated Johnson from his teaching position due to an allegation that he had physically abused his sons by whipping them with a belt buckle and hitting them with a closed fist. Again, both decisions were upheld by the Georgia State Board of Education.

{¶ 12} Johnson *did not* disclose any of the above-mentioned licensing issues with either Ohio or the DCBE on his job application, and TPS was unaware of these issues when it hired him as a substitute in December of 2018. The TPS job application that Johnson submitted specifically asked the following questions "Have you *ever* had a teaching certificate or teaching license revoked or suspended?" "Have you *ever* failed to be rehired, been asked to resign a position, resigned to avoid termination, or terminated

5.

from employment?" (Emphasis added.) Johnson answered these questions in the negative.

{¶ 13} Johnson was required to answer these questions truthfully. If he had answered these questions, "yes", he would not have been hired. Further, if Johnson answered "yes" to the questions, he was also obligated by the application to disclose the licensing and disciplinary details surrounding the "yes" answers. Johnson did not offer any details regarding his prior licensing or disciplinary issues in Georgia or Ohio.

{¶ 14} After TPS terminated Johnson in September 2019, he filed a charge of discrimination with the Ohio Civil Rights Commission "OCRC" against TPS. The OCRC issued a no probable cause finding.

*Johnson & TFT*

{¶ 15} TFT is an Ohio, private, non-profit labor organization that represents the teachers employed by TPS, a public-school employer. As the certified representative, the Federation negotiated a collective bargaining agreement ("CBA") with TPS, effective July 1, 2017, through June 30, 2020, which was the CBA in effect during Johnson's employment with TPS. TFT does not hire, suspend, discipline, or discharge TPS employees, or participate in any such decisions. Among other terms and conditions of employment, the CBA sets forth teachers' due process rights in event of discipline, including a hearing for the record ("HFR") in the Human Resources Office before such discipline occurs. The CBA also delineates the teacher's rights after the hearing in event the hearing officer recommends termination of the teacher's contract.

6.

{¶ 16} In August 2019, TPS offered Johnson a full-time teaching contract. There was nothing offered in the record to show that Johnson was an employee or officer of TFT, that Johnson had any other business with, or had an express trust relationship with TFT. Johnson was an employee of TPS, not TFT. In September 2019, TPS notified Johnson that he was scheduled for a disciplinary hearing with the Human Resources Department. Johnson was granted his due process rights under the CBA - he had a hearing in the Human Resources Office before he was terminated.

{¶ 17} TFT represented Johnson at the disciplinary hearing whereafter discharge was recommended. TFT filed a grievance on Johnson's behalf protesting his termination. TFT represented Johnson in the grievance, and represented Johnson at an arbitration hearing, which was final and binding under the CBA. Johnson did not file any administrative claims or charges against TFT with the OCRC.

*Johnson's Complaint Against TPS & TFT*

{¶ 18} On December 1, 2020, Johnson filed a pro se complaint against TPS alleging race, age, and gender discrimination claims under Title VII and Ohio law, and 42 U.S.C. 1981 and 1983. Johnson later filed a similar complaint against TFT. TPS filed a motion for summary judgment. Johnson eventually filed his own summary judgment motion. TFT filed a Motion to Dismiss, which was converted by the trial court to a motion for summary judgment. The parties filed several other motions.

{¶ 19} On March 14, 2022, the trial court held a hearing on pending motions before a visiting judge where all parties were afforded the opportunity to present their

7.

respective positions on the pending motions. Subsequently, the trial court granted TPS and TFT summary judgment.

{¶ 20} Johnson filed a timely notice of appeal from the March 31 judgments, and asserts a single assignment of error on appeal, "the [trial] court erred in ordering Summary Judgment in favor of defendants-appellees[.]"

**Law and Analysis**

{¶ 21} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). If the moving party satisfies its initial burden, then the nonmoving party has a reciprocal burden pursuant to Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial; if the nonmoving party does not so respond, then summary judgment, if appropriate, must be entered against it. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

8.

*The McDonnel Douglas Paradigm*

**{¶ 22}** In *Williams v. Akron,* 107 Ohio St.3d 203, 2005-Ohio-6268, 837 N.E.2d 1169, the Ohio Supreme Court outlined the process for courts to apply in analyzing discrimination claims:

> Because of the difficulty of proving a discrimination claim, especially where there is no direct evidence of discriminatory motive, the Supreme Court created an analytical framework to address "the order and allocation of proof" in such cases. *McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668.*

> **The Prima Facie Case**

> The initial step in the paradigm requires the plaintiff to "carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. However, the elements of the prima facie case must remain flexible so that they can conform to the facts of the case. Id. at fn. 13.

> Establishing a prima facie case "creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207. "If the trier of fact believes plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." Id.; see, also, *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407, quoting 1 D. Louisell & C. Mueller, Federal Evidence (1977) 536, Section 67 ("To establish a 206*206 'presumption' is to say that a finding of the predicate fact (here, the prima facie case) produces 'a required conclusion in the absence of an explanation' (here, the finding of unlawful discrimination).")

9.

**The Employer's Burden of Production**

If the plaintiff establishes a prima facie case, then the burden of production shifts to the employer to present evidence of "a legitimate, nondiscriminatory reason" for the employer's rejection of the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089, 67 L.Ed.2d 207. If the employer submits admissible evidence that "*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then the employer has met its burden of production. (Emphasis sic.) *St. Mary's,* 509 U.S. at 509, 113 S.Ct. 2742, 125 L.Ed.2d 407. At this point, the presumption created by the prima facie case drops from the case because the employer's evidence has rebutted the presumption of discrimination. Id. at 510, 113 S.Ct. 2742, 125 L.Ed.2d 407.

However, If the employer fails to meet its burden of production and "reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case," then the question of whether the employer discriminated must be decided by the fact finder. (Emphasis sic.) Id., 509 U.S. at 509-510, 113 S.Ct. at 2742, 125 L.Ed.2d 407.

**Pretext**

If the employer meets its burden of production, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, 67 L.E.2d 207, citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817, 36 L.Ed.2d 668. "But a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (Emphasis sic.) *St. Mary's,* 509 U.S. at 515, 113 S.Ct. 2742, 125 L.Ed.2d 407. A case that reaches this point is decided by the trier of fact on the ultimate issue of whether the defendant discriminated against the plaintiff.

*Willliams* at ¶ 9-14. (Emphasis sic.)

**{¶ 23}** We can resolve this appeal applying the *McDonnel Douglas Paradigm* to the trial court record. At the center of this appeal is Johnson's teaching applications and his answers, or lack thereof, regarding the following questions "Have you *ever* had a

10.

teaching certificate or teaching license revoked or suspended?" "Have you *ever* failed to be rehired, been asked to resign a position, resigned to avoid termination, or terminated from employment?"

{¶ 24} In Johnson's most recent job applications of December 2016, Johnson did not list on his application his Georgia employment which had been terminated. He circled "no", when asked on the application if he had ever been discharged from a job. On his on-line applications, when asked if he had ever been terminated or had his "license suspended", he answered "no."

**Johnson's Claims Against TPS**

*Failure to hire claims*

{¶ 25} Johnson states he applied for over 80 jobs from 1998 to time of his hire in 2018 as a substitute teacher, but did not submit a claim to the EEOC until 2019, which, as noted by the trial court was well-beyond the 300-day limitations. *See* 42 U.S.C. 2000e-5(e)(1). Similarly, any claims before December 1, 2014, are barred by Ohio's six-year statute of limitations.

{¶ 26} As noted, in order to establish a prima facie case of discrimination, Johnson must establish that he satisfies *all* of the following: (1) Johnson belonged to a protected class; (2) Johnson applied and was rejected; (3) he was qualified for the position; and (4) a similarly situated person who was not in Johnson's class received the job. *See Williams,* 107 Ohio St.3d 203, 2005-Ohio-6268, 837 N.E. 1169, at ¶ 9-14.

11.

{¶ 27} We find that based upon his past disciplinary and licensing issues, Johnson has not established that he was qualified for the positions which he applied. There is no dispute that there was documentation in his file of significant disciplinary history, including a prior resignation from TPS without notice. Johnson's history, including his licensing issues in Georgia, and his prior license denial from ODE for dishonesty, would also have disqualified him from TPS employment, had he disclosed it. Johnson fails to acknowledge the significance of these misrepresentations in connection with the applications.

{¶ 28} Johnson has also not demonstrated that any similarly situated individuals outside of his protected class were treated more favorably. Johnson would need to establish and point to Caucasian employees, or female, or younger, employed by TPS with similar qualifications and disciplinary histories who were hired while Johnson, who is African American, was not.

{¶ 29} Johnson also summarily claims that "Caucasians continue to get positions that African Americans are denied." The mere observation of a numerical disparity is not enough to establish a prima facie case of disparate impact. We concur with the trial court – Johnson has not produced any "substantial probative evidence" as to any material fact. Moreover, the record as presented contains a wealth of evidence showing that TPS had a legitimate, non-discriminatory reason for not hiring Johnson in 2016, including his significant disciplinary history and resignation without notice.

12.

### *Johnson's 2019 Termination*

**{¶ 30}** With respect to his September 2019 termination, Johnson was also not qualified for the position because he falsified his job application. He failed to disclose to anyone at TPS that his license had been previously suspended. Johnson's extensive disciplinary history in Georgia would have disqualified him from the position at TPS had TPS known about it.

**{¶ 31}** Johnson has not identified any employee from outside of his protected class that was found to have falsified a job application, but was thereafter not terminated, and therefore cannot establish the fourth element of his claim. Furthermore, TPS has identified a legitimate non-discriminatory reason for Johnson's termination – he falsified his job application. The burden then shifted back to Johnson to establish that TPS's reason was false and that discrimination was the real reason. Johnson has failed in that burden.

**{¶ 32}** Johnson appears to argue that he initially marked "yes" to the question on his application asking, "have you ever been terminated from a job?" and "have you ever had your license suspended?" but that someone at TPS must have at changed his answer from "yes" to "no" in support of its discriminatory practices. However, Johnson has offered only allegations in support of this theory, and has offered no Civ.R. 56(E) evidence in support of this claim.

**{¶ 33}** Johnson also did not fill in the follow-up questions asking him to explain the circumstances of any job termination and/or license suspension, and he did not list his

13.

employment with Dougherty County Georgia in the job history section. TPS had a termination hearing and a union grievance arbitration where the arbitrator found that TPS had just cause to terminate Johnson. Reasonable minds could only conclude that Johnson falsely answered the job applications and failed to disclose the requisite circumstances relating to his teaching license suspensions and denials. The trial court correctly granted TPS's motion for summary judgment on the Title VII and Ohio law discrimination claims as it relates to his termination.

### Retaliation claims against TPS

{¶ 34} To prove a retaliation claim, a plaintiff must show that retaliation was the determinative factor, not just the motivating factor – in the employer's decision to take the adverse employment action.

{¶ 35} Johnson has not established that there is any causal connection between his filing of OCRC and EEOC charges in 1998 and 2001 and any employment decisions TPS made more than 15 years later. The record establishes as a matter of law that TPS's decisions were made for legitimate non-retaliatory reasons, and Johnson has not met his burden to establish that those decisions were a pretext for retaliation.

{¶ 36} Johnson also assumes that a "no hire" was placed in his file as a direct result of his previous filed EEOC and OCRC charges. As previously noted, these charges were found without merit. In *Johnson v. Toledo Bd. of Ed.*, N.D. Ohio No. 3:02CV7509, 2003 WL 22436127, the court determined that Johnson's failure to timely resign and disciplinary history were legitimate non-retaliatory reasons not to rehire Johnson. As the

14.

trial court noted, if Johnson would have been honest on his job application, he would have been disqualified for the job based upon his termination and license suspension in Georgia.

{¶ 37} Based upon the record before us, reasonable minds can only conclude that TPS was entitled to summary judgment on Johnson's retaliation claim.

### Disparate Treatment and Retaliation Against TFT under Ohio law

{¶ 38} As to Johnson's claims against TFT for disparate treatment and retaliation, TFT was not Johnson's employer, rather TFT is a labor union. TPS, not TFT was Johnson's employer, and thus a matter of law, TFT was cannot be held liable for any alleged violation of R.C. 4112.02(A) or (I). *See Warnsley v. Toledo Bd. of Ed.*, 6th Dist. Lucas No. L-10-1219, 2011-Ohio-3134. Similarly, Johnson also failed to file a charge with the OCRC which is a statutory prerequisite for filing a civil lawsuit against TFT for an alleged violation of R.C. 41112.02.

{¶ 39} Counts 3 and 4 allege disparate treatment and retaliation under Title VII. Johnson did not file a charge with the EEOC against TFT prior to commencing this civil action alleging disparate treatment and retaliation in violation of Title VII. Since Johnson failed to meet the statutory prerequisite for filing a civil action against TFT, the trial court properly granted summary judgment to TFT on these counts. *See Mitchell v. Chapman,* 343 F.3d 811, 821 (6th Cir. 2003).

{¶ 40} With respect to Johnson's 1981 and 1983 claims, Johnson is required to prove that he was injured by either a state actor or a private party acting under color of

15.

state law. TFT is not a state actor nor does it participate in TPS's hiring, discipline or discharge decisions. *See Albano v. Columbus Bd. of Ed.,* No. 2:14-CV-0379, 2015 WL 1221347, * 9 (S.D. Ohio Mar. 17, 2015).

**{¶ 41}** Notwithstanding our de novo review, the trial court performed a thorough review of the record and summary judgment evidence, and properly applied the *McDonnel Douglas* test. Johnson failed in his *McDonnel Douglas* burden and his reciprocal summary judgment burden - reasonable minds can only conclude that TPS and TFT are entitled to summary judgment. Johnson's assignment of error is found not well-taken and is denied. Johnson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.          _____
                                          JUDGE

Christine E. Mayle, J.        _____
                                          JUDGE

Myron C. Duhart, P.J.         _____
CONCUR.                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.